## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN – MILWAUKEE DIVISION

| | |
|---|---|
| TAQUAYLA RUCKER, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>MILWAUKEE ENTERTAINMENT LLC dba HEART BREAKERS, a Wisconsin Limited Liability Corporation; and DOES 1 through 10, inclusive,<br><br>     Defendants. | Case No.: 2:21-cv-692-BHL<br><br>**COLLECTIVE ACTION**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** |

## TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that plaintiff Taquayla Rucker ("Plaintiff") will and hereby does move this Court pursuant to the Fair Labor Standards Act ("FLSA") for approval of the settlement agreement reached between Plaintiff and defendant Milwaukee Entertainment LLC dba Heart Breakers ("Defendant").

///

//

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Plaintiff Taquayla Rucker ("Plaintiff" or "Rucker") worked as an exotic dancer at Heart Breakers Gentlemen's Club. The club is owned and operated by defendant Milwaukee Entertainment LLC dba Heart Breakers ("Defendant" or "Heart Breakers").

On June 3, 2021, Ms. Rucker brought this action seeking to recover wages owed to her and other dancers who have been classified as independent contractors at Heart Breakers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. *See* Dkt. 1. The Complaint contained causes of action for (1) Failure to pay minimum wages, 29 U.S.C. § 206; (2) Failure to pay overtime wages, 29 U.S.C. § 207; (3) Illegal Kickbacks, 29 C.F.R. § 531.35; (4) Unlawful taking of tips, 29 U.S.C. § 203; and (5) Forced Tip Sharing, 29 C.F.R. § 531.35. *See* Dkt. 1.

The parties were actively engaged in discovery, and Plaintiff was anticipating filing a Motion for Conditional Certification pursuant to 29 U.S.C. 216(b) at the time of the settlement. Counsel engaged in good faith settlement discussions and reached an agreement for which Plaintiff is now seeking approval. Plaintiff seeks approval of the Full Settlement and Final Release of All Claims ("Agreement") attached as Exhibit 1 to the Declaration of John P. Kristensen ("Kristensen Decl."). Pursuant to the Agreement, Defendant will pay Plaintiff a gross settlement of $15,000, with $5,000 allocated to Plaintiff and $10,000 allocated to Plaintiff's attorney's fees. *See* Kristensen Decl. at ¶ 19; Exhibit ("Ex.") 1. Plaintiff seeks $9,553 in attorney's fees and $447 in costs. *See* Kristensen Decl. at ¶¶ 19, 31; Ex. 1. This amount reflects a favorable outcome for Plaintiff, far in excess of what would be expected in a similar Fed. R. Civ. P. 23 class action settlement. Furthermore, the fee request is roughly $2,700 less than Plaintiff's

counsel's lodestar, virtually identical to other rates approved for FLSA settlements, and therefore reasonable. *See* Kristensen Decl. at ¶¶ 31, 38-44.

## II.    FACTUAL BACKGROUND

Plaintiff worked as an exotic dancer at Heart Breakers in Milwaukee, Wisconsin from approximately 2019 to 2020. *See* Complaint, Dkt. 1, ¶ 2. Defendant contended Plaintiff only worked a single shift at Heart Breakers on March 29, 2019. Plaintiff claims she was not properly compensated due to her misclassification as an independent contractor. Defendant denied the allegations, denied liability, denied that the claims were appropriate for collective treatment, and asserted various affirmative defenses in their Answer. *See* Answer Dkt. 8.

## III.    LEGAL GROUNDS OF PLAINTIFF'S CLAIMS

Plaintiff differentiated five types of claims for the dancers. The first two were for failure to pay minimum wage or overtime. However, Plaintiff also had three other forms of damages that they contended they were owed by the Defendants. *See* Kristensen Decl. ¶ 23.

First, Plaintiff contends that dancers were charged house fees to work, which fees were illegal kickbacks pursuant to 29 C.F.R. § 531.35. *See* Kristensen Decl. at ¶ 24. That regulation states, in pertinent part, as follows:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

29 C.F.R. § 531.35

Plaintiff also had claims for two types of tipping violations. First, Plaintiff was "encouraged" to tip Heart Breaker's employees. The forced tipping, Plaintiff contends, is also a

violation of 29 C.F.R. § 531.35, as it results in the dancers subsidizing the clubs' payment of wages to other employees. The second form of claimed damages for tips was the of individual private dances to customers which was retained by Defendant rather than being paid to Dancers. Defendant maintains these fees were fees charged by them and belonging to them. *See* Kristensen Decl. at ¶ 25.

Plaintiff contends that she worked at Heart Breakers from approximately late March 2019 to November 2020. Plaintiff worked roughly three days per week and eight hours per shift.. Plaintiff estimates she worked approximately 228 shifts and paid and claims she was required to pay a nightly house fee and expected to tip out Heart Breaker's employees. The exact amount Plaintiff paid in house fees and tip outs was unknown at the time of settlement. Plaintiff estimated her damages to be at least $26,448. *See* Kristensen Decl. at ¶ 26 However, at the time of the settlement discussions, Plaintiff did not possess any documents supporting the amount of shifts she claimed to have worked. *See* Kristensen Decl. at ¶ 27. Defendant contested Plaintiff's claims and asserted that Plaintiff only worked a single shift at Heart Breakers on March 29, 2019. *See* Kristensen Decl. at ¶ 28.

## IV.    SETTLEMENT AGREEMENT

The parties agreed to a gross settlement of $15,000. A number of factors contributed to the resolution. First, Defendants asserted that Plaintiff only worked at Heart Breakers for a single shift in March 29, 2019 and produced documentation to that effect. While Plaintiff believes she worked more than one shift within the relevant period, a risk existed that Plaintiff would be unable to demonstrate the full extent of her damages. Furthermore, the Covid-19 pandemic and the lack of insurance were strongly taken into account by Plaintiff in deciding to resolve the matter. Kristensen Decl. at ¶ 29. Defendants faced pressure on Plaintiff's collective claims, the

anticipated Motion for Conditional Certification, and the possibility that many more individuals would opt-into this collective action.

Plaintiff's counsel' lodestar was at least $12,292.50 and costs of $447. Kristensen Decl. at ¶ 30.

Pursuant to the agreement, Plaintiff's counsel will receive $9,553 in fees ($2,700 less than the lodestar of Kristensen LLP alone) and be reimbursed for $447 in costs. Plaintiff will receive $5,000 in total. In a fee bearing case, with a strong likelihood of liability on the employment issue, and the potential for additional opt in plaintiffs, there is incentive to proceed. However, the real effects on Covid-19 on exotic dance club defendants, no insurance coverage, and the real risk that Plaintiff would be unable to demonstrate the full extent of her damages played a substantial role in deciding to settle. The settlement is a compromise of disputed issues. Kristensen Decl. at ¶ 31.

In exchange for the consideration described above, Plaintiff has agreed to dismiss her causes of action for alleged violations of the FLSA and any state wage and hour claims stemming from Plaintiff's employment as alleged in the operative Complaint. Kristensen Decl. at ¶ 32.

## V.    STANDARD FOR APPROVAL OF FLSA SETTLEMENT

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The court must determine whether the settlement's terms and conditions represent "a fair and reasonable resolution of a bona fide dispute over FLSA

provision" and reflect a "compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching. *Id*. at 1354-55.

To avoid a challenge to the validity of a settlement of FLSA claims, either approval by a court or the Department of Labor is required. *See Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986)

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)). As discussed below, those factors strongly favor approval of this settlement.

///

## VI.    APPROVAL OF THE FLSA SETTLEMENT

### A.    Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812, at *3 (N.D. Cal. July 23, 2019); *see Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F.Supp.2d 714, 719-720 (E.D. La. 2008)).

The Court should approve the settlement because it reflects a reasonable compromise of bona fide dispute regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith negotiation between the Parties. Substantial differences and risks existed for both Plaintiff and Defendant. Kristensen Decl. at ¶ 33. The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fee charged by and collected by the Defendant belonged to the Defendant or was a tip belonging to the Plaintiff. Plaintiff believed her case was strong, but there was the risk she would be unable to demonstrate the full extent of the days she worked at Heart Breakers. The settlement did not make Plaintiff necessarily whole. However, that is not a requirement, and would render most settlements unattainable. Kristensen Decl. at ¶ 34.

Because the Parties disputed these aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

B. **Fair and Reasonable**

The *Lynn's Food Stores* factors in determining whether a settlement is fair and reasonable are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

This Settlement was an arm's length transaction negotiated between Mr. Kristensen and Ms. Nelson. The litigation could have continued until December 12, 2022, 14 months away. *See* Dkt. 17, ¶ 10; Kristensen Decl. at ¶ 35. The fees would have been insurmountable to a resolution at that point. The parties were able to exchange evidence regarding Plaintiff's tenure and concern about the potential damages was made clear. The parties were able to assess their risk at an early

stage. *See* Kristensen Decl. at ¶ 36. Courts have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See, e.g., Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc*., No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009). Within the Seventh Circuit, even recovering **10% of a claim's anticipated total value** is deemed to be a reasonable FLSA settlement. *See Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016) (liquidated damages settlement of $100 or $250 per plaintiff deemed reasonable where it was anticipated such damages would not exceed $1,010 per plaintiff). Also, while Plaintiffs' counsel is receiving payment of reimbursable costs and attorneys' fees from the Agreement, there is nothing out of the ordinary in this arrangement. *See Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) ("[C]ounsel is receiving a substantial fee. However, the class is also receiving a significant monetary benefit.").

Lastly, counsel on both sides have experience in FLSA cases. As explained above, the incentive for Plaintiff's counsel to continue greatly outweighed the settlement resolution. The matter settled as it was a fair compromise at an early stage in the proceedings. *See* Kristensen Decl. at ¶¶ 2-18, 37.

## VII.  ATTORNEY'S FEES & COSTS

Plaintiff's request for attorneys' fees is reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Fed. R. Civ. P. 23 ("Rule 23") class action settlements and, as such, allow for a greater recovery of fees. Judge Smith of the District of Rhode Island and Judge Casper of the District of Massachusetts approved Plaintiff's counsel's exact same rates less than 30 days ago. *See*

Kristensen Decl. at ¶¶ 38-39; Exs. 4-5.

A. **FLSA Collective Action Settlements Allow for a Greater Recovery Than Rule 23 Class Action Settlement**

In Rule 23 class actions, attorneys more often than not seek fees in excess of their lodestar by requesting that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of 2.697); *see also In re TJX Companies Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 408 (D.Mass. 2008) (applying a lodestar multiplier of 1.97); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (applying lodestar multiplier of 3.5). By contrast, here, Plaintiff's counsel merely seeks a negative or inverse multiplier, resulting in an award substantially less than their lodestar. *See* Kristensen Decl. at ¶¶ 30-31; Ex. 2.

FLSA settlements are subject to a different standard and allow for a greater recovery of attorneys' fees than do Rule 23 class action settlements in order to encourage attorneys to take on these sorts of wage-and-hour cases. *See Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1267 (D. Nev. 2014), *aff'd*, 655 F. App'x 602 (9th Cir. 2016) ("there is no requirement that fee awards be proportionate to the monetary recovery, unduly restricting fee awards would discourage attorneys from taking FLSA cases, and a successful FLSA claim vindicates statutory rights, even if it does not result in a substantial monetary recovery."); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (holding that a proportionality rule limiting attorney's fees to 33% of total settlement would also be inconsistent with the remedial goals of the FLSA); *see also Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4

(W.D.N.C. June 9, 2020) (noting that "courts have rejected the notion that [FLSA] fee awards should be proportionately tied to a Plaintiff's recovery." (quotation omitted)); *Kazanjian v. MSM Enterprises, Inc.*, No. CIV. 93-227-P-C, 1995 WL 140153, at *3 (D.Me. Mar. 15, 1995) ("in an FLSA fee determination, a court should not place *undue* emphasis on the amount recovered by a plaintiff since the award of fees 'encourages the vindication of congressionally identified policies and rights,' even if the recovery is only nominal.").

Indeed, the **public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiff's award**. *See Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 12356838, at *1 (E.D. Wis. Nov. 15, 2012)(noting that "proportionality between fees and damages is not required" and approving FLSA award of attorneys' fees represented 75% of total award under the lodestar approach, "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation"). *Bonnette v. California Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir.1983) (affirming $100,000 in attorney fees on a judgment of $18,455 in damages); *SKF USA Inc. v. Bjerkness*, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395, at *3 (N.D. Ill. 2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested); *also Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994) ((affirming attorney fees of $40,000 on a judgment of $7,680 for overtime compensation); *Lucio–Cantu v. Vela*, 239 Fed. App'x. 866 (5th Cir.2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679). In this case however, Plaintiff's attorneys merely seek an amount in fees which is less than their lodestar. *See* Kristensen Decl. at ¶¶ 30-31; Ex. 2.

Therefore, the Court here should not limit itself in awarding attorney's fees as if this case were a Rule 23 class action. It is not a class action, but instead a collective action with public policy considerations that afford a more generous calculation of fees.

**B.** **Plaintiff's Attorneys' Fees Would Be a Reduction of the Lodestar and Would Therefore Be a Reasonable Award**

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiff's counsel have a lodestar of $12,292.50. *See* Kristensen Decl. at ¶ 30; Ex. 2. However, Plaintiff's counsel is merely seeking $9,553 in fees, which is less than their lodestar. *See* Kristensen Decl. at ¶ 31 In other words, Plaintiff's counsel are seeking roughly $2,700 less than what they would otherwise be entitled to based on the time they have spent litigating this matter. *See id.*

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiff's attorneys. Plaintiff's counsel are well versed in both FLSA collective actions and Rule 23 class actions and have achieved

numerous successful outcomes. *See* Kristensen Decl. at ¶¶ 2-18. Furthermore, Plaintiff's attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout the country. Kristensen Decl. at ¶¶ 38-43; Exs. 4-9.

In *Ariel Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS (D.R.I. 2019), Plaintiff's counsel sought approval of a similar FLSA settlement involving the wage and hour claims of exotic dancers. *See* Kristensen Decl. at ¶ 38; Ex. 4. In the *Macklin* case, Plaintiff's counsel sought a reduction of their lodestar. *See id.* Plaintiff's counsel's rates in *Macklin* were the same as in the present case. *See id.* There, Judge Smith found both the settlement and the attorney's fees and costs to be reasonable. *See* Kristensen Decl. at ¶ 39; Ex. 5.

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25. District courts in Wisconsin, Rhode Island, and Massachusetts have granted Plaintiff's counsel's attorney's fees at identical rates. *See* Kristensen Decl. at ¶¶ 38-43; Exs. 4-10.

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiff than if she pursued her claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. *See Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the cash pool will be around $200"); Kristensen Decl. at ¶ 44; Ex. 10, *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec.

14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1057 per participating class member).

Here, by contrast, the settlement for Plaintiff is $5,000. *See* Kristensen Decl. at ¶ 19; Ex. 1. Therefore, the proposed settlements in this matter demonstrate the benefits of pursuing FLSA claims as a collective action rather than as a Rule 23 class action.

## VIII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order approving the Settlement Agreement.

Dated: October 20, 2021

*/s/ John P. Kristensen*
John P. Kristensen
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*

Jay A. Urban
**URBAN & TAYLOR S.C.**
4701 N. Port Washington Road
Milwaukee, WI 53212
Telephone: (414) 906-5333
Fax: (414) 906-1700
*jurban@wisconsininjury.com*

**Attorneys for Plaintiffs**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on Wednesday, October 20, 2021 a true and correct copy of the attached **PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** was served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Jeffrey T. Nichols
Mary E. Nelson
**CRIVELLO CARLSON, S.C.**
The Empire Building
710 N Plankinton Ave - Ste 500
Milwaukee, WI 53203-2404
Phone: (414) 271-7722
Fax: (414) 271-4438
Email:
*jnichols@crivellocarlson.com*
*mnelson@crivellocarlson.com*

***Attorneys for Defendant***

*/s/ John P. Kristensen*
_____
John P. Kristensen